Good morning, Your Honors. I'm Daria Carlson. I represent the Plaintiff and Appellant, Dennis Johnson. There are several issues before the Court today. The first issue is whether this Court has jurisdiction to hear the instant appeal. We contend that this Court does have jurisdiction based on two separate grounds. The first is FAA 16A3, which permits an appeal from a final decision with respect to an arbitration. The second basis is 28 U.S.C. 2201, which provides that a denial of declaratory relief is appealable. First, the district court's order that we are appealing from is final and appealable. Let me just ask you something. I mean, this thing bumfuzzles me because I just don't know how to read the order. On the one hand, you can read the order as you just said, as being as final as final can be, because it says, I'm dismissing the action with prejudice. I mean, those are words of absolute finality. On the other hand, what the order actually did was to say, you can't arbitrate class claims. You can only arbitrate individual claims. In that respect, it's more similar to, like, Bushley, where you get half of a loaf. You know, you can't arbitrate in the form you want, but you can arbitrate in a different form. Here, you can arbitrate individual claims, but you can't arbitrate class claims. And if that's what the order was, then it's not appealable. So how do you interpret the order and why? And I guess finally, if at the end of the day you have to sort of throw up your hands and say what I just said, why shouldn't we just send it back and let the district court look at it again? Your Honor, I find that the order, in my opinion, is final based on several things. First of all, the title of the order repeatedly has the word judgment in it. It's called the Order Granting Motion of Defendant Grumman Corporation for Judgment on the Pleadings and for Declaratory Judgment. Well, but if that's true, what happened to the class claims? I mean, they still exist up in the air somewhere, I assume. I don't think so. I mean, isn't it an effect like a stay, like Bushley? I don't believe it's like a stay, Your Honor. There is no indication in the final order indicating that there was a stay. I agree with that. I agree. There's no indication in the prior order, the March 5, 2002 order, which the appellees attempt to rely on as the basis for the stay. That action was dismissed without prejudice. There's simply no stay. I think the Court disposed of the individual claims by sending them to arbitration. With respect to the class and representative claims, the Court refused to send them to arbitration, but didn't stay them, didn't reserve any jurisdiction with them. But they exist. So presumably, once the arbitration as to individual claims would be concluded, wouldn't they then surface? I disagree. What happened to them? I disagree that Judge Reel had any intent whatsoever to do anything at all with respect to the class action claims. I don't think that he intended that the class action proceed before him. Well, he intended to get rid of them. Exactly, Your Honor. Exactly. That supports my point that this is the final order. I think he did intend to get rid of them. You could have raised those claims in an appeal from the arbitration award, could you not? I think that ultimately. I'm sorry. I'm not understanding your question. You would certainly, I assume, intend to raise these class claims again, would you not? I think based on Judge Reel's order that we don't have the opportunity to raise those class claims again, at least not through. No, but I mean if there's an effort to enforce the arbitration award, presumably you can impose that and raise the class claims at that time, can't you? I don't think that would be an appropriate time to raise them, Your Honor. I think that now is the appropriate time to raise them based on the time. Yeah, well, you may be correct about that. I'm not suggesting that now is inappropriate, but I'm saying that if they were lost now, you could have raised them eventually, could you not? Your Honor, I'm quite certain that if we didn't raise them on appeal now and we attempted to wait until after the Johnson arbitration was over, that the appellees would claim that we had waived our right based on the fact that this was a final order and that now was the appropriate time to raise the issues. I just believe that Judge Reel intended to dispose of it. No, I mean, if we say we don't have jurisdiction to hear the appeal at this time, you haven't waived anything, I don't think. I would expect that the appellees would say that we did. Again, I think that now is the appropriate time. I don't think that Judge Reel intended to do anything else with respect to this case. I think he intended to have it moved off his docket. There's a JS6 notation on this order as well as the prior March 5, 2000 order, which is an indication that the clerk believed that these matters were done and over with. Well, it's an indication that he wanted it off of his case management calendar. It doesn't have any other significance. Your Honor, there's a case, I believe it's the Dees case. Which says it doesn't have any significance. Well, it was sort of a different situation because that was in the context of an administrative closure. But it certainly indicates that the court didn't intend to leave it open and revisit any of the issues that were before him at the time. Now, he didn't have the benefit of his Basel case when he made this decision, right? That's correct, Your Honor. Basel came down subsequently. Well, we might assume that if he made the decision again that he might, after looking at the Basel case, come out the other way, right? I think it's possible. I think if he were given the opportunity to look at it again, that the appropriate thing for him to do would be to look at it in light of Basel and determine that there was nothing for him to do, that the arbitrator was the one who had the authority to make all the decisions with respect to the arbitrator. But I think at the time, the law was unclear, which was the basis for the appeal. The law was unclear with respect to what the arbitrator's powers were, which was the basis for the appeal. And then Basel came down subsequently. I also want to add with respect to the issue of jurisdiction. In addition, as I said, to asserting jurisdiction under the FAA and the issue of whether it's a final order, we do also assert another basis for jurisdiction, which is 28 U.S.C. 2201, which permits an appeal from an order denying declaratory relief. And clearly, Judge Reel denied our request for declaratory relief in dismissing our complaint for declaratory relief with prejudice. If I might for a minute get into the issue of Basel and whether Basel is binding on this court, we're obviously taking the position that Basel is binding on this court. The appellees are taking the position that Basel is not a majority opinion but is a plurality opinion and therefore not binding on this court. Assuming it's binding, how does Basel interact with the Keating hybrid approach, which is what the arbitrator was apparently following? Your Honor, at the time that the arbitrator made his decision, Keating made it appear that the court had the authority to decide class issues. Yep. Keating did not address what the arbitrator could do. Right. So we take the position that the law was unclear at that time, that Basel clarified that issue, and it is now abundantly clear, according to Basel, that the arbitrator has the authority to make all those decisions. Well, whether or not Basel is binding authority or not on this court, it certainly seems to me it's influential authority, isn't it? I absolutely agree, Your Honor. I think that in addition to being influential, it is binding. Based on Justice Stevens' comment that he was concurring in the opinion for the purpose of creating a controlling judgment, I think that Basel is absolutely binding. Other courts that have looked at whether Basel is binding have all determined that it is, in fact, binding. The Fifth Circuit and PEDCOR looked at the Basel case, looked at what Justice Stevens said, and made a determination that Justice Stevens did create a binding opinion. There have been no courts since Basel that have refused to apply Basel and have refused to permit the arbitrator to have the authority to make the decision about class arbitration. There's also a California case law which has upheld Basel, namely the Garcia v. DirecTV case. So we think that the argument that Basel is not binding is completely without merit. We also believe that the district court's order should be reversed because it is in violation of the Orion case, which prohibits a reversal of an interim order of the arbitrator. When the arbitrator requested the district court's guidance with respect to the issues that he requested in the order, it was certainly his intent to have the arbitration back with him to make the final decision on the merits. When Judge Reel took the case from the arbitrator and made his ruling, he overturned much, in fact, if not all, of what the arbitrator indicated. The arbitrator indicated the California law applies. Judge Reel determined that Federal law applies. The arbitrator determined that the Federal law applies. I don't know what he did. The order respectfully, Your Honor, states that FAA applies. It does? Yes, Your Honor. Unless I'm mistaken, but. Well, okay. So he's required to submit his disputes to final and binding arbitration pursuant to Section 4 and to the court's prior order. Right. But he's not making a determination that Federal law governs the class action question, is he? Your Honor. It's just implicit. I mean, he's wrong under Basel. I mean, there's just no question. It's wrong. But that's not exactly what we've got to deal with, is it? Well, Your Honor, I — the order is somewhat vague with respect to the wording. So the way that I've analyzed the order is to look at — because the order grants the appellee's motion for judgment on the pleadings, I looked at what was asked for in the motion for judgment on the pleadings, assuming that that was the basis of the court's rationale. And what was requested in the motion for judgment on the pleadings, what the appellee had argued was that the FAA applies and that under Federal law, the arbitrator does not have the authority to decide those questions. So understanding that perhaps Judge Reel could have been more clear in his order in stating the basis for his order, I went back to what was granted in addition to looking at what was stated in the order to sort of fill in the blanks. And Judge Reel also did not address the questions that were in our motion for declaratory relief. So I sort of set those aside, looked at the motion for judgment on the pleadings and made a determination as to what I sincerely believe that Judge Reel meant in fashioning his order. If the Court has no other questions, I would like to reserve the rest of my time for my rebuttal. Okay. And we'll hear from Salyer. Good morning, Your Honors. Rachel Hellyer, Akin Gump for Grumman Corporation. I'd like to start by looking at the two orders that frame the jurisdictional argument because I agree they're not crystal clear. Well, why shouldn't we just send it back and let Judge Reel tell us what he meant? Well, actually, I was going to suggest that as an alternative if you don't adopt our interpretation of these two orders. The way we see the orders, he grants a stay the first time and compels arbitration and then he dismisses without prejudice. Well, he didn't grant a stay in the first one. I mean, it's in the caption, but that's not what the mandate says. And it may be the functional effect of it, but, I mean, he didn't grant a stay. Did he? I think he did. I think we moved for a stay. He granted, and it's in the caption, it's also on the very, it's a very terse ruling, but it's on the second page that he's granting a motion compelling arbitration and saying that. He granted your motion, but he luckied around with the order. And I don't see the word in there at all. It's hereby ordered that the motion is granted, plaintiff is ordered to submit all claims which he is asserting against defendants to final and binding arbitration. But regardless of that, that order was in a different case. It is a dead duck and has nothing to do with this case, does it? Well, I don't think it is a dead duck because he incorporates it by reference in the second order when he says I've already compelled arbitration under my March 5th order, and the only thing he dismissed with prejudice the second time around was the single cause of action, plaintiff's duck relief action. So I don't think he was dismissing the entire arbitration. No, no, no. I don't either. I don't think anybody thinks that. Do they? I don't think they think he's. I thought they thought that. I don't think they think. I don't think that that's what he did. No, I don't either. You know, it would be nice to have a little more guidance. But it seems to me that what he did pretty definitively was to say no class action. Yes, the second time. Yeah, as a final order. As to that specific issue. Yeah, and your position is that by analogy to sort of basic class stuff, we don't have jurisdiction over that, even though it was a final resolution of the declaratory relief action. I think my primary argument is that we look at it in the context of this arbitration. I still read the first part of it. In terms of judicial economy, your position doesn't make much sense, though, does it? Well, I don't know. You know, we're going to have an arbitration without a class action. And then at some subsequent time on appeal, we decided it ought to be a class action. You got it back. I can do it all over again as a class action. Don't you? Well, this this. I mean, I don't know. I assume that this is appealable at some point. Yes, I agree. Although your opponent says maybe that maybe you'd claim the wave that I don't know. I'm not sure I understand that. But how much sense does it make for us to for this to go forward? Judge Riel's decision here where he hadn't it didn't even have the benefit of Basil when he made the decision. Then we go through all that rigmarole and it comes back on appeal again. And we say, well, it should have been a class action. It goes back and you have a class action. Is that in the interest of judicial economy? Well, I think it would have been in the interest of judicial economy for this three years ago when arbitration was first compelled to have gone through the system as a single plaintiff arbitration. And then we probably would have been done with the appeal from that by now anyhow. By doing it this way, we've delayed everything three years, which is contrary to the policy that this Court followed in Bushley, which is get things to arbitration, move them through, then resolve all the issues at once at the end. If you remand now for him to look at Basil and then the appeal from that, I don't know when this arbitration is going to take place. It seems to me that in general judicial economy. Well, it ought to be the right arbitration whenever it does take place, should it not? Pardon me? I say hopefully it would be the right form of arbitration when it does take place. I mean. As a class. Class action, it's better to decide that now, is it not, than have to decide it after you've arbitrated it once on a non-class action basis? Well, we don't know whether Judge Neal, the arbitrator, would order it to class action. He never reached that decision. Well, he certainly indicated he would. He indicated. No, I don't think so. I think he indicated that his view of California law was that class action was permissible. Whether or not he would have certified a class would have required a whole certification proceeding that he never reached. And certainly at the time, California law wouldn't have allowed him to reach it. Well, is that the reason you've been arguing so vociferously for this being a question not for the arbitrator? I don't think that Basel – I don't think Basel results in any kind of binding precedent. I've briefly argued otherwise. Do you think the Ninth Circuit would be prudent, well-advised to decide contrary to Basel at this point? I don't know whether it would be prudent and well-advised. I think it would be correct to say that Basel doesn't really tell us anything about what the right answer here is. I think that it's true that a lot of the district courts have said, well, we're just going to follow what they perceive to be the majority. A bunch of law reviews have come out the other way, including the Harvard law review we cited. I don't know. I've looked at what Judge – Justice Stevens did again and again, and I've looked at the Marks case and its progeny, and I can't see him signing on to the reasoning. I know that he signed on to the result, but he said that he would have affirmed he thought the court had the authority to do what it did. He didn't even think the question of who the right decision-maker was was a question even before the court. And then he says, well, I think we need to have a result here, so because arguably the plurality is right and I kind of like their ideas a little better than the dissent, I'm going to sign on to the result. May I ask you the same question that I asked Ms. Carlson, and that is how do you see, assuming that Basel has a controlling judgment, how do you see the interplay between Basel and the hybrid Keating approach that the arbitrator followed here? Well, I think that's an excellent question and quite a conundrum, partly because we don't really know what Keating had in mind as to the back-and-forth between the court and the arbitrator. It's true. It's a very unwieldy procedure. It's very true. Then the question is, well, can the California Supreme Court say that's how we're  Well, they haven't ruled on that yet. Well, you now have one California Court of Appeals decision, which is Judge Vogel's in Garcia saying, well, Keating isn't any longer really very persuasive. In fact, it's undermined because of Basel. So is that how it would all play out? Yes. You could certify the question to the California Supreme Court. They do have a similar case pending before them right now because I'm not sure how they would rule on that. To be perfectly honest, I think that there are grave problems associated with having arbitrators perform class actions, and the court is well aware of that and wants to take all that into consideration when it reaches this issue. You know, one of the problems is the very narrow appealability of an arbitration decision, and if we have a class arbitration with huge amounts of money at stake and then no real appealability, I think that does raise due process problems, and the California Supreme Court has indicated at times that that's what it believes. So perhaps they would stick with the Keating rule that there has to be some sort of a hybrid, and in the past they have decided that they don't always have to follow U.S. Supreme Court on questions like that. They didn't follow the Supreme Court of Randolph. Well, let me ask you this. Let's suppose that the regime is the Keating regime, okay? Okay. And that the arbitrator did everything by the books, okay? He said, okay, the arbitration agreement doesn't preclude a class action. We're silent on it. And under California law, that means it could be or it could not be a class action, but that determination is for some trial court, okay? So obviously it kind of intended it to go to State court. Yes. But it didn't, thanks to you guys. Okay. So you pop it into Federal court. So then you get the ruling. All right. Let's suppose that the order was a perfect order, and it said something like, you know, I've been asked to do this Keating analysis, and I've considered whether this case is really the kind of case that should go forward as a class action in arbitration or isn't, and I think it should or shouldn't for these reasons. And I think that that's all I need to decide, and the arbitrator can decide the rest. Whatever. It doesn't make any difference. Anyway, suppose a perfect order responsive to Keating. Mm-hmm. Is that appealable? I don't think at this juncture it is. And, again, it may boil down to whether there is a Section 3 stay in place because that seems to be the way it's playing out post-Randolph. So in your view, that would become an appealable resolution only at the end. Even if he – if the district court, the trial court, had said, sure, there is absolutely no reason in the world this thing can't go forward as a class action, and furthermore, I'm going to certify it just to make life easy, and now go back to arbitration. Your view is you couldn't appeal that. Not then. We'd have to wait until the end and appeal it. On a confirmation of the arbitration award. Or vacating it. I mean, I guess whatever. I don't think we'd have the manifest disregard standard because it would have been a court decision. Isn't that just bizarre? I – we've looked at this case from every angle, and it's really difficult to see why. That's why I – I commend your suggestion that we go back and ask Jadriel whether he meant to stay this thing or not. But if he doesn't stay, then appealability, and we wait until the whole thing is over, and then we appeal it. Anything else? Anything else? I don't think so. Thank you for – for your argument. Ms. Carlson, did you have anything to add? First of all, with respect to sending this matter back down to Jadriel to make some clarification or a decision about what he would do in light of Basel, I think that if it goes back to Jadriel and he says anything other than, in light of Basel, I don't have the authority to do anything, and the arbitrator has the authority to decide all the class issues. If Jadriel were to say anything other than that, I think we're going to be right back here before this Court with respect to the same issues. Maybe this Court, but not this panel. And maybe not me. I also wanted to draw the Court's attention to the Blue Cross v. Superior court case, which cites to the Keating case, and the Garcia v. Direct TV case addresses the Blue Cross case and basically finds that it's abrogated. So I would argue that the Garcia v. Direct TV really has a negative impact on Keating. And the last point that I wanted to make to this Court is it seems over the last year or so that there has been a trend in all the courts to allow the arbitrators to make more and more decisions and to have more and more authority. And I think to make a ruling in the other direction would be somewhat of an aberration and probably contrary to the way that the trend is moving. And that's my final point. Kagan. All right. Do you have any other questions? I don't think so. But Ms. Carlson and Ms. Hilliard, I want to thank you both for your argument. It was very interesting issue, and we appreciate your insights. So the matter just argued will be submitted. And we'll next hear argument in Massack v. Keller. Thank you.
judges: Browning, Cudahy, Rymer